UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RITA A.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 25-cv-10732<br>Honorable Judith E. Levy<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT
(ECF NOS. 10, 16)**

## I.    Introduction

Plaintiff Rita A. appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for supplemental security income (SSI) under the Social Security Act.  Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  ECF No. 7; ECF No. 10; ECF No. 16.  The Court **RECOMMENDS** that: (1) plaintiff's motion (ECF No. 10) be **GRANTED**; (2) the Commissioner's motion (ECF No. 16) be

**DENIED**; and (3) this action be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g).

## II.    Background

### A.  Plaintiff's Background and Disability Application

Born in January 1985, plaintiff was 37 years old at the time of her application in July 2022.  ECF No. 5-1, PageID.39, 49. Plaintiff had past relevant work as a fast-food worker.  *Id.,* PageID.41.  She claimed to be disabled from a hip defect and hip replacement.  *Id*., PageID.82, 91.

Plaintiff applied for SSI, alleging disability beginning on the date of filing.  The claim was denied in December 2022, and upon reconsideration in April 2023.  After plaintiff requested a hearing, the ALJ held one in November 2023, during which plaintiff and a vocational expert (VE) testified.  The ALJ found plaintiff not disabled.  *Id*., PageID.50.

The Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner.  *Id.*, PageID.23-25.  Plaintiff timely filed for judicial review.  ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).

3

the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that plaintiff was not disabled.  At the first step, he found that plaintiff engaged in substantial gainful activity during the third quarter of 2022, but that there had been a continuous 12-month period during which plaintiff did not engage in substantial gainful activity and his remaining findings addressed that period.  *Id.* at PageID.41.  At the second step, the ALJ found that plaintiff had the severe impairments of congenital hip deformity, status post bilateral total hip replacement; left knee bursitis; mild intermittent asthma; left posterior tibial tendinitis, status post-surgical repair; generalized anxiety disorder; and major depressive disorder.  *Id.*  Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  *Id.*, PageID.42-43.

Between the third and fourth steps, the ALJ found that plaintiff had the RFC to perform light work with added limitations:

> [She is] able to alternate between sitting and standing as
> needed, but by exercising that option, would be off task less
> than 10% of any given workday; capable of sitting for up to 1
> hour, and capable of standing/walking up to 30 minutes, before
> change of position; frequently balance, but remaining postural
> activities can be done occasionally; avoid concentrated
> exposure to extreme cold, vibration, and respiratory irritants;
> and capable of understanding, remembering, and carrying out

4

simple, routine tasks.

*Id.*, PageID.44.  At step four, the ALJ found that plaintiff is unable to perform any past relevant work.  *Id.*, PageID.48.  At the final step, after considering plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ concluded that she could perform jobs that existed in significant numbers in the national economy, including collator, inspector/hand packager, and assembler of small products, which are unskilled jobs.  *Id.*, PageID.49-50, 76.  The ALJ thus concluded plaintiff was not disabled.  *Id.*

### III.   Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up).  The substantial-evidence standard does not permit the Court to independently weigh the evidence.  *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Plaintiff asserts that the ALJ (1) failed to elicit sufficient testimony from the VE about whether she could perform the positions of collator, inspector/hand packager, and assembler of small products with an at will sit-stand option; (2) improperly failed to incorporate a push-pull limitation; and (3) failed to properly evaluate the opinion of treater Janan Hawil, M.D. ECF No. 10, PageID.4434-4443.  The Court agrees with plaintiff's first two arguments and recommends remand.

**B.**

The ALJ found that plaintiff could not perform any past relevant work, so the Commissioner bears the burden of showing that she can perform other work in the national economy.  *Preslar*, 14 F.3d at 1110.  The ALJ may rely on the testimony of the VE to meet that burden only if the hypothetical to the VE accurately portrays the claimant's physical and mental impairments.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).  The ALJ here asked the VE to assume a hypothetical that aligned with the RFC the ALJ later adopted.  ECF No. 5-1, PageID.75.

The hypothetical included light work with "a sit-stand option, but by exercising that option, would be off task less than 10% of any given workday.  This individual is capable for sitting up to one hour, standing or walking up to 30 minutes at a time."  *Id*.  The VE asked for clarification of how frequently the claimant could exercise the sit-stand option, and the ALJ responded, "[A]t will, but the ability to sit for an hour at a time, stand or walk for up to 30 minutes at a time."  *Id*.  The VE then said that, "if the person is just standing up and sitting down," the claimant could work in the unskilled positions of collator; inspector and hand packager; assembler, small products.  *Id*., PageID.76.

7

Light work involves standing or walking for six hours out of an eight-hour workday.  20 C.F.R. § 416.967(b); Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6.  "Sitting may occur intermittently during the remaining time."  SSR 83-10, 83-10, 1983 WL 31251, at *6.  A light-weight job "requires a good deal of walking or standing—the primary difference between sedentary and most light jobs."  *Id.* at *5.

Plaintiff argues that an at will sit-stand option would allow her to sit all day, gutting the standing, walking, and carrying demands of light work, and aligning more closely with sedentary work.  ECF No. 10, PageID.4435 (citing *Palmer v. Comm'r of Soc. Sec.*, No. 19-cv-11020, 2020 WL 5209358, at *2 (E.D. Mich. Sep. 1, 2020)).   The Court disagrees.  The RFC and hypothetical here would not allow her to sit a full workday if doing so would result in the claimant being off task more than 10% of the workday.  *Palmer* is distinguishable because, unlike here, the RFC limitations in *Palmer* did not "focus on the impact on production-related or off-task behavior."  *France v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-02396, 2022 WL 465680, at *16 (N.D. Ohio Jan. 24, 2022), *adopted*, 2022 WL 462835 (N.D. Ohio Feb. 15, 2022) (addressing an RFC with a sit-stand option and with the plaintiff being no more than 10% off task).

When an RFC or hypothetical includes production or off-task parameters, a "sit/stand option is not really akin to the typical 'at will' restriction." *Chance v. Comm'r of Soc. Sec.*, No. 3:21-CV-00156-DAR, 2022 WL 1046088, at *4 (N.D. Ohio Apr. 7, 2022).   Courts have found that, when an RFC for light work requires both an at will sit-stand option and 90% on-task, the ALJ must "specify the frequency of any sit/stand position changes." *France*, 2022 WL 465680, at *16.

The need for specificity derives from the known erosion of available light work jobs for those who require a sit-stand option.  *See, e.g., Waters v. Comm'r of Soc. Sec.*, No. CIV.A. 10-14927, 2012 WL 511998, at *3 (E.D. Mich. Jan. 5, 2012), *adopted,* 2012 WL 512021 (E.D. Mich. Feb. 16, 2012) (VE testified that sit-stand option would reduce light work jobs by 50%); *Grubb v. Comm'r of Soc. Sec.*, No. 10-CV-11064, 2011 WL 846073, at *2 (E.D. Mich. Feb. 9, 2011), *adopted,* 2011 WL 846064 (E.D. Mich. Mar. 8, 2011) (VE testified that sit-stand option would reduce available light work cashier jobs from 32,000 to 3,000).  The Social Security Administration has, in fact, deemed the need to alternate between sitting and standing a "special situation" that may preclude an RFC of sedentary or light work.

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate between periods of sitting and standing.  The

9

> individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting.  Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work *(and for the relatively few light jobs which are performed primarily in a seated position)* or the prolonged standing or walking contemplated for most light work.

SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983) (emphasis added).

The erosion of light work is heightened with unskilled work. "Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base." *Id*.   SSR 83-10 likewise notes, "Relatively few unskilled light jobs are performed in a seated position."  1983 WL 31251, at *6.

Courts have also relied on SSR 96-9 to find that a sit-stand option in an RFC or hypothetical must include the required frequency of position changes. *Williams v. Comm'r of Soc. Sec.*, No. 13-CV-12617, 2014 WL 4705397, at *6 (E.D. Mich. Sept. 22, 2014).  Under SSR 96-9, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."  1996 WL 362208, at *34482 (July 2, 1996).  And "[w]hile SSR 96–9 refers to sedentary rather than light work, *the importance [of] determining the required frequency of position changes in determining the capacity for light work is similarly critical*."  *Williams*, 2014

10

WL 4705397, at *6 (emphasis added); *see also Springer v. Comm'r of Soc. Sec.*, No. 2:16-CV-10681, 2017 WL 2952089, at *3 (E.D. Mich. June 22, 2017), *adopted,* 2017 WL 2931187 (E.D. Mich. July 10, 2017) (same).

The ALJ here posed a hypothetical about a claimant who could alternate between sitting or standing "at will," and the VE answered by referring to a person who was "just standing up and sitting down."  ECF No. 5-1, PageID.75-76.  The RFC is similarly vague, stating that plaintiff could sit and stand "as needed" without addressing the frequency with which alternating positions would be "needed."  *Id*., PageID.44.  Given the known erosion of unskilled light work with a sit-stand option, and given the limited period within the RFC permitted plaintiff to be off-task, the ALJ should be required to engage in further fact-finding.[2]

---

[2] The Commissioner notes that plaintiff's counsel did not cross-examine the VE about the available jobs, suggesting an argument that plaintiff waived her argument that the hypothetical to the VE was not sufficiently specific. ECF No. 16, PageID.4471.  But the Court agrees with opinions finding that a claimant's failure to question the VE does waive her right to challenge the RFC.  *See, e.g.*, *Chance*, 2022 WL 1046088, at *6 (collecting cases).  "To hold otherwise would mean that a claimant could never object to an ALJ's RFC determination without first probing the VE on the related issue." *Id.*

11

## C.

The ALJ's further fact-finding should include clarification of how plaintiff could perform the jobs of assembler of small products, collator, and inspector and hand packager with an at will sit-stand option and 90% on task requirement.  The Dictionary of Occupational Titles (DOT) describes light work for each of these jobs as requiring either significant walking or standing, or ample pushing and pulling:

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

Assembler, Small Products II, DICOT 739.687-030, 1991 WL 680180; Collator, DICOT 653.687-010; 1991 WL 685810; Inspector and Hand Packager, DICOT 559.687-074 1991 WL 683797.  The at will sit-stand option would seemingly preclude plaintiff from performing jobs requiring significant walking or standing.  And substantial evidence does not support the ALJ's exclusion of a pushing and pulling limitation in the RFC.

Plaintiff notes that the ALJ found generally persuasive the opinions of state agency consultants that plaintiff could engage in occasional pushing and pulling with her lower extremities but did not include that limitation in

the RFC.  ECF No. 10, PageID.4437-4438.  The Commissioner responds that "the ALJ was not required to adopt every opined limitation verbatim in the RFC, particularly where the ALJ explained which limitations were accommodated."  ECF No. 16, PageID.4473 (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015)).  But *Reeves* only partially supports the Commissioner's argument.

In *Reeves*, the ALJ gave great weight to a consultant's opinion but did not err in omitting from the RFC some of the consultant's recommended limitations that "lack[ed] substantial support elsewhere in the record."  618 F. App'x at 275.  So *Reeves* does not support an argument that an ALJ needs only to explain which limitations were accommodated.  Rather, its holding reflects the foundation rule that an ALJ's decision must be supported by substantial evidence in the record.  *Biestek*, 587 U.S. at 102-03.

And an ALJ's decision must "provide an accurate and logical bridge between the evidence" and the RFC.  *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017) (cleaned up); *see also Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the [RFC] finding, but the [ALJ] must make a connection between

13

the evidence relied on and the conclusion reached."). That is, the "ALJ must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning" to permit meaningful review. *Cortes v. Comm'r of Soc. Sec.*, No. 18-13347, 2020 WL 2812761, at *10 (E.D. Mich. May 29, 2020) (cleaned up). An ALJ's failure to provide an adequate rationale warrants remand, even if substantial evidence supports the RFC. *Gross*, 247 F. Supp. 3d at 829.

Here, after noting plaintiff's congenital dysplasia of her hips and joint pain, two state agency consultants found that plaintiff could perform sedentary work with other limitations. ECF No. 5-1, PageID.87-89, 95-97. The ALJ summarized the consultants' opinions, including the limitation to "occasional pushing/pulling with the bilateral lower extremities," and found those opinions generally persuasive. *Id*., PageID.47-48.

> These assessments are generally persuasive because they accommodate the claimant's difficulty with prolonged standing and walking by limiting the claimant to 4/8 hours, and provides for postural limitations to accommodate the claimant's bilateral hip replacement and left knee pain. Additionally, this assessment accommodates the claimant's asthma by limiting the claimant's exposure to extreme cold and respiratory irritants. However, the claimant will be allowed a sit/stand option to accommodate the claimant's allegations of the need to change position, but the sit/stand option would not take the claimant off task more than 10% of the workday.

14

*Id*.  Thus, the ALJ included postural limitations to "accommodate the claimant's bilateral hip replacement and knee pain," but he without explanation omitted the exertional limitation of pushing and pulling with her lower extremities.  *Id*., PageID.44, 47-48; *see also* SSR 83-14, 1983 WL 31254 (January 1, 1983) (describing pushing and pulling as exertional activities).  And unlike in *Reeves*, the state agency's opinions that plaintiff needed a limitation for pushing and pulling with her lower extremities finds support in the record.

A consulting examiner, Jose Jurado, M.D., agreed that plaintiff's impairments limited her to occasional pushing and pulling.

> Based on today's exam, including the history and physical exam, along with the documents reviewed, the claimant has occasional physical limitations with pushing, pulling, lifting, carrying, reaching, and occasional to frequent limitations to standing, squatting, bending due to the findings above, which includes tenderness to palpation to the lumbar area with some limitations to hip joint dysfunctions and pain with some balance issues decreased range of motion to the right/left hip joint and externally rotated feet on both sides to do sedentary work.

ECF No. 5-1, PageID.423.  Dr. Jurado described plaintiff's musculoskeletal examination of her lower extremities this way: "Range of motion of the hips, knees, ankles and feet done with pain noted in both hips, knees and ankles; limitations into in both hips."  *Id*.  The ALJ found Dr. Jurado's opinion persuasive "to the extent that the claimant requires some limitations

15

regarding lifting, carrying, reaching, squatting, and bending which are accommodated in the above residual functional capacity." *Id.*, PageID.48. Again, the ALJ did not explain why he accommodated some of the exertional limitations Dr. Jurado identified but not the limitation on pushing and pulling. *Id.*

Plaintiff's treating physician of 10 years, Janan Hawil, M.D., described her as having impairments in her hips and her left foot and ankle, which reduced her range of motion, and caused joint instability, abnormal posture, swelling, muscle spasm, abnormal gait, and positive straight leg raising testing. ECF No. 5-1, PageID.718. The ALJ found Dr. Hawil's overall opinion unpersuasive because, among other reasons, it was "inconsistent with the objective clinical findings." *Id.*, PageID.48. But the ALJ did not dispute that plaintiff had the objective clinical findings related to her lower extremities that Dr. Hawil described.

To the contrary, the ALJ found that plaintiff's congenital hip deformity, her left knee bursitis, and left posterior tibial tendinitis were severe impairments and he imposed limitations in the RFC to accommodate those impairments. *Id.*, PageID.41, 44, 47-48. But the ALJ provided no logical bridge to allow this Court to trace the reasoning of his decision to exclude lower-extremity pushing and pulling limitations from the RFC.

16

The ALJ's failure to explain the omission of a pushing and pulling limitation is not harmless because including such a limitation would further erode the occupational base for someone with plaintiff's limitations.  As noted, the light-work jobs the VE identified would require either substantial standing and walking; sitting most of the time but with "pushing and/or pulling of arm or leg controls"; or "production rate pace entailing the constant pushing and/or pulling of materials."  Assembler, Small Products II, DICOT 739.687-030, 1991 WL 680180; Collator, DICOT 653.687-010; 1991 WL 685810; Inspector and Hand Packager, DICOT 559.687-074 1991 WL 683797.

For these reasons, the ALJ should clarify on remand whether plaintiff requires a pulling and pushing limitation and, if so, whether jobs exist in the national economy to accommodate that added limitation.

## IV.   Conclusion

The Court **RECOMMENDS** that plaintiff's motion for summary judgment (ECF No. 10) be **GRANTED,** the Commissioner's motion for summary judgment (ECF No. 16) be **DENIED**, and this action be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: February 16, 2026

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.*  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to

18

Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 16, 2026.

s/Davon Allen
DAVON ALLEN
Case Manager

19